IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> SCOTT A. ROSKOVSKI, <br><br> *Defendant.* | Criminal No. 2:19-cr-106 - 2 <br><br> Hon. William S. Stickman IV |

## MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

In September 2017, the Federal Bureau of Investigation ("FBI") was contacted by representatives of Butler Health System ("BHS")[1] regarding their former Chief Operating Officer ("COO"), Stephanie Roskovski. Mrs. Roskovski, who had been an employee of BHS for approximately 25 years, served as the Vice President of Outpatient Services from May 2007 to April 2012, and as the COO from April 2012 until August 2017. BHS terminated Mrs. Roskovski in August 2017 after discovering she had been embezzling money through fraudulent travel reimbursement claims and utilizing her corporate credit card for personal expenses. Her husband, Defendant Scott A. Roskovski, was employed as a detective with the Butler County District Attorney's Office, and conducted investigations involving fraud and other financial crimes. (ECF No. 36). The FBI and the Internal Revenue Service initiated an investigation of Defendants' alleged criminal conduct, which led to a 37-count Indictment in April of 2019 and then a 42-count Superseding Indictment in May of 2019 that charged Defendants with

---

[1] BHS provides healthcare services of residents of Butler, Pennsylvania, and the surrounding region. They operate Healthcare Providers, d/b/a Butler Memorial Hospital. (ECF No. 36).

1

committing mail fraud, conspiracy to commit mail fraud, money laundering, conspiracy to commit money laundering, false statements on loan application, and filing false tax returns, among other crimes. (ECF No. 36).

On May 28, 2020, Mr. Roskovski appeared before the Court and, pursuant to a plea agreement with the government, entered a plea of guilty to Counts 36 and 42 of the Superseding Indictment charging him with violating 18 U.S.C. § 1014 and 26 U.S.C. § 7206(1), respectively. (ECF No. 95). The Court understood this agreement to have been the result of extensive negotiations between the parties over 13 months. As part of the plea agreement, the parties agreed that Mr. Roskovski's overall offense level under the advisory sentencing guidelines is 17, he has no criminal history points, and his criminal history category is I. The parties further agreed that this equates to an advisory guideline range of 24 to 30 months imprisonment and that they would not seek any downward or upward variances or departures. The parties stipulated that the total tax loss for purposes of USSG § 2T1.1 is not less than $250,001 nor more than $550,000, and that if the parties did not stipulate to the exact amount of loss, the Court would determine the exact amount of tax loss. The Court accepted Mr. Roskovski's guilty plea, and adjudicated him guilty of Counts 36 and 42. It deferred ruling on the plea agreement until it reviewed the Presentence Investigation Report ("PSIR"). Sentencing was set for October 6, 2020. (ECF No. 100).

The Final PSIR was filed on August 12, 2020. (ECF No. 110). The parties then filed their respective Positions With Respect to Sentencing Factors (ECF Nos. 115-118), and an Addendum to the PSIR was filed on September 10, 2020. (ECF No. 122). The parties requested two continuances of sentencing (ECF Nos. 124, 127), and the Court itself issued another continuance (ECF No. 132). On December 4, 2020, sentencing was ultimately set for January

27, 2021. (ECF No. 132). The government has represented that "in an endeavor to agree on the loss amount in advance of sentencing, the parties continued their discussions regarding the government's calculations as to loss, as well as additional review of documents and other evidence which supported these calculations." (ECF No. 143, ¶ 14). By doing so, the government states that it "essentially supplied the defendants with a 'map' of its theory of the case and the records and documents supporting said theory." (ECF No. 143, ¶ 14).

Fifteen (15) days before sentencing and on the due date for the parties' sentencing memoranda, Mr. Roskovski filed a Motion to Withdraw Guilty Plea. (ECF No. 138). Sentencing was postponed, and the parties have briefed the motion. The Court will deny Mr. Roskovski's motion for the reasons set forth below.

## I. STANDARD OF REVIEW

There is no absolute right to withdraw a guilty plea. *United States v. Ho-Man Lee*, 664 F. App'x 126, 127–28 (3d Cir. 2016) (citing *United States v. Vallejo*, 476 F.2d 667, 669 (3d Cir. 1973)). A defendant may withdraw a guilty plea after the court accepts the plea but before it imposes a sentence if the "defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). *See also United States v. Jones*, 336 F.3d 245, 252 n.6 (3d Cir. 2003) ("If a motion to withdraw a plea of guilty . . . is made before a sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason.") (alteration in original) (citation omitted). The defendant must carry the "substantial" burden of showing "a fair and just reason" for withdrawing his guilty plea. *Id.* (internal quotation marks and citation omitted). "Once a [district court] accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *Id.* "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the

government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (citation omitted).

"A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252 (citation omitted). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (citation omitted). "Bald assertions of innocence, however, are insufficient to permit a defendant to withdraw [his] guilty plea." *Id.* (citation omitted). With respect to the second factor, "[a] shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Id.* at 815. If a defendant fails to satisfy his burden on the first two factors, the government need not show whether it would be prejudiced. *See United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986).

## II. ANALYSIS

Mr. Roskovski advances one argument as to why he should be permitted to withdraw his plea - "he does not believe 'that the facts he is prepared to admit constitute the offense[s] charged[]'" in that "each of the offenses has a *mens rea* requirement that Mr. Roskovski cannot admit to and desires to challenge before a jury." (ECF No. 138, p. 2). Apparently, Mr. Roskovski now believes that he did not possess the necessary state of mind to commit Counts 36 and 42, and "he now wishes to exercise his right to trial." (ECF No. 138, p. 3). In response to the government's Opposition and argument that Mr. Roskovski's motion is meritless, Mr.

4

Roskovski filed a Reply noting that he is making an assertion of innocence – "that he did not make any statement in the at-issue loan application with the *knowledge* that the statement was false and the *purpose* of thereby influencing the lender, and he did not *willfully* submit a false tax return." (ECF No. 144, p. 1) (emphasis in original). He believes that he has met the substantial burden for withdrawing his guilty plea. The Court disagrees. Not only has Mr. Roskovski failed to meet his substantial burden, but he was sufficiently competent to enter his plea and the Court remains convinced that he understood his rights, the nature of the charges and the direct implications of entering a guilty plea.

The first factor the Court must consider has not been met by Mr. Roskovski. A defendant who moves a district court to withdraw a guilty plea must make a credible showing of innocence that is supported by a factual record. *Jones*, 336 F.3d at 252. "Bald assertions of innocence," without more, will not do. *Id.* "'Assertions of innocence must be buttressed by facts in the record that support a claimed defense.'" *Brown*, 250 F.3d at 818 (quoting *United States v. Salgado-Ocampo*, 159 F.3d 322, 326 (7th Cir. 1998)) (internal citation omitted). Mr. Roskovski has not meaningfully established that he is innocent.

Mr. Roskovski simply states that he did not have the necessary *mens rea* to commit he offenses to which he pled guilty. In other words, he argues that he "did not have the required knowledge, willfulness, or purpose," to commit Counts 36 and 42. According to Mr. Roskovski, he devoted "additional time to the individual transactions" he made, which led to "an accompanying realization" that undermined the "required willfulness for the false tax return count" and "the required knowledge and purpose for the false statements count." (ECF No. 144, p. 3). Beyond this statement, Mr. Roskovski has not offered any concrete facts or further explanation to support an assertion of innocence. He has not pointed to any evidence or details

5

as to how he did not possess the requisite *mens rea* to commit Counts 36 and 42.[2] Mr. Roskovski has offered no evidence to support a defense to the charges or cast doubt on the overwhelming proof of his guilt proffered by the government as to Counts 36 and 42 at the time of his guilty plea.

On three occasions during the hearing, Mr. Roskovski stated that it was his intention to enter a guilty plea. (ECF No. 142, pp. 7, 11, 37). Mr. Roskovski specifically acknowledged the charges against him as set forth in the Superseding Indictment – i.e., Counts 1 through 22 (mail fraud), Count 23 (conspiracy to commit mail fraud from April 2011 until December 2017), Count 29 (conspiracy to commit money laundering from April 2011 until December 2017), Counts 30 through 35 (money laundering), Counts 36 and 37 (false statements in a loan application; Count 38 (conspiracy); and Counts 39 through 42 (filing a false income tax return) – as well as the pertinent penalties, all of which the Court thoroughly reviewed with Mr. Roskovski. (ECF No. 142, pp. 11-22). The government summarized the plea agreement, which consisted of Mr. Roskovski entering a guilty plea to Count 36 (false statement in loan application) and Count 42 (filing a false income tax return) of the Superseding Indictment and acknowledging his responsibility for the conduct charged in Counts 37 through 42 of the Superseding Indictment in exchange for the Government moving to dismiss the remaining counts after sentencing. (ECF No. 142, pp. 23-25). The parties agreed to a plethora of stipulations regarding sentencing and calculating the tax loss. (ECF No. 142, pp. 25-27). As to the elements of the charges to which Mr. Roskovski was pleading guilty, they were explained to him as follows by the government:

---

[2] As part of his plea, Mr. Roskovski also acknowledged his responsibility for the criminal conduct charged in Counts 37 through 42 of the Superseding Indictment.

> [T]he elements as it relates to Count 36 – that is the crime of making a false statement in connection with a loan application – one, that the defendant made or caused to be made a false statement or report upon an application to a bank for a loan or credit card. Two, that the defendant acted knowingly. Three, that the false statement or report was made for the purpose of influencing in any way the bank's action on the loan application. And, lastly, that the false statement or report was made in connection with the loan application to a bank, the deposits of which were insured by the FDIC.
> 
> As it relates to Count 42, . . ., in order for the government to establish the crime of filing a false income tax return, the government must prove five essential elements. First, that the defendant made and subscribed and filed an income tax return. Two, that the tax return contained or was verified by a written declaration that it was made under the penalties of perjury. Three, that the return was false regarding a material matter. Fourth, that the defendant did not believe the return was true and correct as to that material matter. And, five, that defendant acted willfully.

(ECF No. 142, pp. 27-28). Mr. Roskovski stated that he agreed with the government's representation of the plea agreement and the elements of the charges to which he agreed to plead guilty. He was given the opportunity to make any corrections, and he told the Court that there was nothing he wanted to add. (ECF No. 142, pp. 28-29). The government then provided an extensive summary of the evidence as to the charges outlined in the plea agreement, and it is as follows:

> The defendant's codefendant, Stephanie Roskovski, while serving as chief operating officer for Butler Health System, perpetrated a fraud during the period April 2011 through 2017 whereby she embezzled – and the government's evidence would establish – in excess of 1.3 million from her employer, BHS. She did so and the records the government would present at this trial would reflect that she used her corporate credit card to make purchases that she disguised as business expenses.
> She submitted falsified reimbursement requests claiming purchases she made on a personal credit card were for business purposes, and she obtained hundreds of merchant gift cards worth more than $350,000, falsely claiming they were for distribution to other individuals, work-related focus groups, physicians and the like.
> The government's evidence would further establish through both witness testimony as well as thousands of documents received during the course of the criminal investigation from various vendors, retailers and the like, that all said funds that I'm referencing were used purely for personal purposes. The monies were spent by both she and her husband.

      Significant sums of money stolen from Butler Health System, the records establish, were used for all sorts of purposes related to SwitchbackMX, LLC, a business that Mr. Roskovski primarily operated, which is a motocross business in Butler, Pennsylvania.

      Monies were spend on lavish vacations that he enjoyed with his wife and children, renovations to their personal residence; and, as I indicated, significant sums were use for the purpose of renovating the motocross business, buying supplies, computer systems, supplying the business with various prizes and other equipment necessary for its operation.

      So with respect, I think I'll just address Count 42 first since that, of course, relates specifically to the monies embezzled from BHS. So as indicated in the indictment, Your Honor, the defendant, together with his wife, jointly filed their income tax returns; that is, their Form 1040.

      Specifically for calendar year 2016, the defendant filed a paper return on or about July 2nd of 2017. On Line 43, one of the most important pieces of a legitimate tax return, are the taxable income. On that taxable income, as indicated in the indictment, the government would establish he reported a sum of $238,711 when, in fact, he had a substantial additional taxable income, that being, the government would establish, in the amount of [$]306,532.

      The government would show that had the amount of income been reflected, there would have been a significant tax loss to the IRS in that particular year of approximately $111,003. The particular tax return in question, Your Honor, the government would establish, was prepared by a tax return preparer, provided to both the defendant and his codefendant for signature, both of whom signed under the jurat, indicating that they were signing under the penalty of perjury and then thereafter mailed the completed return with his signature to the Internal Revenue Service.

      In addition to the sums of money I've just discussed – that is the unlawful proceeds of the fraud that were not reflected on the particular return – the government would also establish that the defendant falsified other information on this particular return and the other returns which are the subject of the superseding indictment.

      As to this return, the defendant falsely claimed an additional over $7,000 – that being $7,315 – in vehicle parking and travel expenses that he indicated his wife paid that were not, in turn, reimbursed by her employer. The government would establish that all such travel expenses were, in fact, paid by BHS. This, again, was the methodology for reducing taxable income and paying lower taxes for the year 2016.

      As it relates to Count 36, Your Honor, that being of a false loan application to a bank, the government would establish through records and testimony from S&T Bank that they are, first and foremost, insured by the Federal Deposit Insurance Corporation. The government would furthermore present evidence that would indicate, as it related specifically to the employment of the defendant and his wife, at the time of the submission of the particular loan application – actually, I should go back a bit.

> The Court has heard previously that codefendant Stephanie Roskovski was terminated from Butler Health System on August 4th of 2017, following an internal investigation – or an internal revelation, I should say, that she was involved in a fraud with her employer. Thereafter she was employed for just under a year with Highmark in a similar capacity.
>
> At that particular position she was earning approximately $275,000, when, at some point, Highmark learns of – the government doesn't know how, but learns of her conduct with Butler Health System and prepared and executes with her a separation agreement and release terminating her employment from Highmark.
>
> The government would present that agreement, which reflects that Ms. Roskovski signed the agreement on March 5th of 2018; furthermore, that the terms of that agreement established her departure effective seven days thereafter. As such, her termination was 3/12 of '18. One day later the defendant, Your Honor, applied for more than a million dollars in loan funds from S&T Bank.
>
> Specifically, on March 13th of 2018, they submit a loan application jointly. They set forth various information; and in connection with that loan application, they are directed, as any other applicant would be, to complete in detail a personal financial statement which is provided to the bank and relied upon by the bank in assessing whether the loan should be extended. That personal financial statement, as indicated in the indictment, was provided to – submitted to S&T Bank specifically on March 16th of 2018, four days after the defendant well knew she was no longer employed – as did the defendant – no longer employed with Highmark.
>
> On that particular personal financial statement, the government would establish that the defendant falsely reported that his wife was employed and earning $275,000 when they very well knew she was unemployed at the time. Two, they also provided a false information as it related to their liabilities. There were schedules as part of the personal financial statement, short schedules, specifically as it related to Schedule G, other liabilities.
>
> The defendant failed to report to S&T Bank that he and his wife had earlier entered into, at the time of her termination from BHS, a civil settlement agreement that addressed some of the funds that were embezzled from BHS. And as part of the civil settlement agreement, as of March 13th of 2018, the defendant well knew that they owed and were on a payment plan of at least 270,000 or more dollars.
>
> Both of these pieces of information would significantly affect their personal financial well-being, most importantly the fact that both defendants were no longer employed. And the government would establish that the bank, in turn, relied upon that financial information and extended two loans based upon such information, one being the significant loan for refinancing the motocross business and one being for a significant piece of equipment that was purchased specifically for use at the motocross business.

(ECF No. 142, pp. 29-34). Defense counsel interrupted at this point, and clarified "there is a factual basis to support each element of the offense to which he is pleading guilty," but that Mr.

9

Roskovski "[does not] agree with every component, every statement, in that lengthy factual recitation." (ECF No. 149, pp. 34-35). Counsel for Mr. Roskovski further noted that the plea agreement contemplated a loss range, and that he hoped the parties could stipulate to such an amount prior to sentencing, but if no such stipulation was reached, the Court would have to conduct a hearing. (ECF No. 149, p. 35). The government noted that it felt "very confident" that it could establish the loss figure for purposes of the embezzlement for 2016, and therefore, that it could calculate the tax loss for 2016. As to the S&T loan, the Government informed the Court that Defendants were not in arrears and they were making payments. (ECF No. 146, p. 36). The Court informed the parties that if an agreement was not reached prior to sentencing, it would certainly conduct an evidentiary hearing to establish loss. (ECF No. 146, p. 37). Then, the following colloquy of Mr. Roskovski occurred:

> THE COURT: For the record and so that we're absolutely clear as we move forward here, I want to ask your client – and, of course, you're welcome to clarify in any respect you find appropriate as counsel, though: Mr. Roskovski, as to the prosecution's summary of your conduct as to each of the elements of Counts 36 and 42 to which you're pleading guilty, do you agree with the government's recitation of your conduct?
> THE DEFENDANT: The elements, yes, Your Honor.
> THE COURT: And do you agree that there is a factual basis for each and every one of the elements of the two crimes to which you've agreed to plead guilty?
> THE DEFENDANT: Yes, Your Honor.
> THE COURT: Do you still wish to plead guilty today?
> THE DEFENDANT: I do.

Next, Mr. Roskovski entered the following guilty plea:

> THE COURT: Then I'll ask you, Mr. Roskovski: As to Count 36 of the superseding indictment, did you knowingly make false statements in applications for a loan to S&T Bank, in violation of 18, United States Code, Section 1014?
> THE DEFENDANT: Yes, I did.
> THE COURT: And as to Count 42 of the superseding indictment, did you file a false income tax return, in violation of 26, United States Code, Section 7206(1)?

10

>   THE DEFENDANT: Yes, I did.

(ECF No. 146, p. 43). Mr. Roskovski also signed the change of plea form solidifying his guilty plea. (ECF No. 146, pp. 44-45). The Court accepted his guilty plea and adjudicated Mr. Roskovski guilty of Counts 36 and 42 of the Superseding Indictment. (ECF No. 146, pp. 44-45; ECF No. 97).

The Court cannot ignore that Mr. Roskovski's factual admissions at his guilty plea hearing, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Mr. Roskovski swore a solemn oath to tell the truth during his guilty plea proceeding. At no time during that process, did he indicate his innocence. He participated in a thorough guilty plea colloquy where the Court asked him on numerous occasions whether he had had sufficient time to confer with counsel and whether he understood the nature of the proceeding. Mr. Roskovski replied affirmatively to each inquiry. As recounted above, the Court engaged in a lengthy inquiry to ensure that Mr. Roskovski was acting knowingly and voluntarily in pleading guilty. Mr. Roskovski went on to affirm that he was guilty based on having committed the acts set forth by the government at Counts 36 and 42 of the Superseding Indictment. Then, after the guilty plea proceeding, he went through the process of the preparation of the Final Presentence Investigation Report and Addendum. At no point during that process, or in the eight months he has awaited sentencing, did Mr. Roskovski allege his innocence. Mr. Roskovski's allegation of innocence occurred a mere 15 days before his sentencing hearing. He has clearly had a change of heart or he fears punishment. Whatever the case may be, the Court finds his assertion of innocence to ring hollow; it is nothing more than a bald assertion unsupported by facts in the record that credibly support a claimed defense. Mr. Roskovski's novel assertion is undermined

by the admissions he made under oath in court. The Court holds that he has not met the first factor to withdraw his guilty plea.

Additionally, the Court is not persuaded by the strength of Mr. Roskovski's reason for withdrawing his plea. The second factor in assessing whether a guilty plea can be withdrawn is whether a defendant has proffered "sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Jones*, 336 F.3d at 253 (citation omitted). Weighing heavily in the Court's decision is Mr. Roskovski's unique background. He was a detective for the Butler County District Attorney's Office for 20 years and actually conducted criminal investigations and participated in criminal proceedings – including trials and guilty plea proceedings. (ECF No. 110, p. 14). He personally conducted investigations involving fraud and other financial crimes. (ECF No. 36). Prior to that, he was employed by the Butler County Sheriff's Department for 4 years. (ECF No. 110, p. 15). One could say he is quite savvy when it comes to the criminal justice system and financial crimes. There can be no doubt that Mr. Roskovski possessed a thorough understanding of his plea negotiations and the crimes to which he pled guilty. The only reason he has offered to the Court for his contradictory position now is that he "devoted" "additional time to the individual transactions" he made, which led to "an accompanying realization" that undermined the "required willfulness for the false tax return count" and "the required knowledge and purpose for the false statements count." (ECF No. 144, p. 3). This falls woefully short of establishing the existence of strong reasons to support the

withdrawal of his guilty plea. The Court holds that he has not met the second factor to withdraw his guilty plea.[3]

Despite the fact that Mr. Roskovski has failed to demonstrate his innocence and has failed to proffer any strong reasons justifying his withdrawal of his guilty plea, i.e., he has not met his burden by showing that the first two factors support a withdrawal, the Court will briefly consider the third factor since both parties addressed the issue of prejudice to the government. The government has represented that it would be significantly prejudiced in that a substantial amount of time has passed since charges were brought and "that presents unfair challenges to the government in its ability to secure the testimony of witnesses and original records for submission in its case in chief." (ECF No. 143, p. 14-15). The government further states that in its quest to reach a stipulation as to the tax loss incurred, it "has generously provided the defendant and his codefendant/coconspirator a 'map' of the government's theory of the case and the records and documents that support that theory. In some instances, the government has gone so far as to highlight the important aspects of the records provided." (ECF No. 143, p. 15). Mr. Roskovski has countered that the passage of time is normal and it was compounded by the COVID-19 pandemic and the suspension of in-court proceedings, and that what occurred during negotiations with the government was standard. (ECF No. 144, pp. 3-4).

---

[3] Mr. Roskovski did not request a hearing on his motion. As discussed, he has not offered any evidence regarding his assertion of innocence with respect to Counts 36 and 42, and he has not even specified what his evidence would be. Nor has he proffered any evidence with regard 6to the second factor. Further, the Court has found no merit to Mr. Roskovski's contentions regarding the first two factors. It would not have afforded him a hearing had he requested one. *See United States v. Schmutzler*, No. 13-65, 2014 WL 2592728 (M.D. Pa. June 10, 2014), *aff'd* 602 F. App'x 871 (3d Cir. 2015) (district court did not conduct hearing on defendant's motion to withdraw his guilty plea and denied it on the briefs when defendant failed to present a "fair and just" reason to support withdrawing his guilty plea).

13

Mr. Roskovski was set to be sentenced a mere 15 days after he filed his motion to withdraw his guilty plea. Eight (8) months have passed since he entered his guilty plea. The Indictment against him was filed in April of 2019, and the Superseding Indictment was filed in May of 2019. The criminal conduct at issue occurred from April 2011 to December 2017. Prejudice is seemingly apparent. The underlying criminal conduct occurred at least three 3 years before the withdrawal motion, and the government has shared considerable evidence with Mr. Roskovski as well as its "map" of its theory of the case. *See United States v. Hannibal*, 663 F. App'x 206, 209 (3d Cir. 2016) (the government may be prejudiced by elapsed time between commission of charged crimes and withdrawal motion). The lapse in time may very well lead to lost memories of witnesses and lost original documents, which would be necessary to prosecute all the counts charged in the Superseding Indictment – not just the two to which Mr. Roskovski pled guilty. Further, the government will be prejudiced since it will have to prepare and conduct a trial for Mr. Roskovski, which will cost it considerably more time and resources. Judicial resources will have been wasted; the U.S. Probation Office expended time and resources to prepare a comprehensive PSIR and Addendum. *See United States v. Schmutzler*, 602 F.App'x 871, 873 n.2 (3d Cir. 2015) (wasted governmental resources constitutes prejudice.). Thus, while the Court does not need to consider the third factor, were it to do so, it would find the government would be prejudiced.

The Court has considered the relevant factors and, in its discretion, finds that Mr. Roskovski has not established a "fair and just reason" to withdraw his knowing and voluntary guilty plea to Counts 36 and 42 of the Superseding Indictment, and finds that he has failed to meet his "substantial" burden to withdraw his guilty plea.

### III. CONCLUSION

For the foregoing reasons of law and fact, the Court concludes that Mr. Roskovski is not entitled to withdraw his guilty plea. His motion will be denied by separate Order.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

__2/11/21_____
Date