IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     *Plaintiff*,<br><br>v.<br><br>SCOTT A. ROSKOVSKI,<br><br>     *Defendant*. | Criminal No. 2:19-cr-106 - 2<br><br>Hon. William S. Stickman IV |

### MEMORANDUM OPINION

WILLIAM S. STICKMAN IV, United States District Judge

On May 28, 2020, Mr. Roskovski appeared before the Court and, pursuant to a plea agreement with the Government, entered a plea of guilty to Counts 36 and 42 of the Superseding Indictment charging him with violating 18 U.S.C. § 1014 (False Statements in a Loan Application) and 26 U.S.C. § 7206(1) (Filing a False Tax Return), respectively. (ECF No. 95). The Court accepted Mr. Roskovski's guilty plea, and adjudicated him guilty of Counts 36 and 42. It deferred ruling on the plea agreement until it reviewed the Presentence Investigation Report ("PSIR"). Sentencing was set for October 6, 2020. (ECF No. 100).

The Final PSIR was filed on August 12, 2020. (ECF No. 110). The parties then filed their respective Positions With Respect to Sentencing Factors (ECF Nos. 115-118), and an Addendum to the PSIR was filed on September 10, 2020. (ECF No. 122). Two continuances of sentencing were granted (ECF Nos. 124, 127), and the Court itself issued another continuance (ECF No. 132). On December 4, 2020, sentencing was ultimately set for January 27, 2021. (ECF No. 132).

1

Fifteen (15) days before sentencing and on the due date for the parties' sentencing memoranda, Mr. Roskovski filed a Motion to Withdraw Guilty Plea. (ECF No. 138). Mr. Roskovski sought to withdraw his plea because he did not believe "that the facts he is prepared to admit constitute the offense charged." (ECF No. 138, p. 2). He later clarified that he did not have the required *mens rea* for the crimes to which he pled guilty because, "he did not make the statement in the at-issue loan application with the *knowledge* that the statement was false and the *purpose* of thereby influencing the lender, and he did not *willfully* submit a false tax return." (ECF No. 144, p. 1).

Sentencing was postponed, and briefing occurred on the motion. The Court, by February 11, 2021 Memorandum Opinion and Order, denied Mr. Roskovski's request to withdraw his guilty plea. (ECF Nos. 145 and 146). It found that Mr. Roskovski failed to meet the substantial burden for withdrawing his guilty plea, that he was sufficiently competent to enter his plea, and that he understood his rights, the nature of the charges and the direct implications of entering a guilty plea. (ECF No. 145, p. 5). Of particular note was the Court's finding that Mr. Roskovski's assertion of innocence rang hollow and it was actually undermined by the admissions he made under oath as well as his unique personal background. (ECF No. 145, pp. 5-12). The Court's Memorandum Opinion is hereby incorporated herein.

On March 4, 2021, approximately three weeks after the Court denied Mr. Roskovski's motion, he obtained new counsel. (ECF Nos. 149 and 150). Then, on April 5, 2021, he filed a second Motion to Withdraw Guilty Plea. (ECF No. 164). The Government filed a Response objecting to Mr. Roskovski's second request to withdraw his guilty plea. (ECF No. 172). For the following reasons, the Court will deny Mr. Roskovski's motion.

I. STANDARD OF REVIEW

There is no absolute right to withdraw a guilty plea. *United States v. Ho-Man Lee*, 664 F. App'x 126, 127–28 (3d Cir. 2016) (citing *United States v. Vallejo*, 476 F.2d 667, 669 (3d Cir. 1973)). A defendant may withdraw a guilty plea after the court accepts the plea but before it imposes a sentence if the "defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). *See also United States v. Jones*, 336 F.3d 245, 252 n.6 (3d Cir. 2003) ("If a motion to withdraw a plea of guilty . . . is made before a sentence is imposed, the court may permit the plea to be withdrawn if the defendant shows any fair and just reason.") (alteration in original) (citation omitted). The defendant must carry the "substantial" burden of showing "a fair and just reason" for withdrawing his guilty plea. *Id.* (internal quotation marks and citation omitted). "Once a [district court] accepts a defendant's guilty plea, the defendant is not entitled to withdraw that plea simply at his whim." *Id.* "A shift in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001) (citation omitted).

"A district court must consider three factors when evaluating a motion to withdraw a guilty plea: (1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252 (citation omitted). "Assertions of innocence must be buttressed by facts in the record that support a claimed defense." *Brown*, 250 F.3d at 818 (citation omitted). "Bald assertions of innocence, however, are insufficient to permit a defendant to withdraw [his] guilty plea." *Id.* (citation omitted). With respect to the second factor, "[a] shift

3

in defense tactics, a change of mind, or the fear of punishment are not adequate reasons to impose on the government the expense, difficulty, and risk of trying a defendant who has already acknowledged his guilt by pleading guilty." *Id.* at 815. If a defendant fails to satisfy his burden on the first two factors, the government need not show whether it would be prejudiced. *See United States v. Martinez*, 785 F.2d 111, 116 (3d Cir. 1986).

## II. ANALYSIS

The Court remains steadfast in its determination that Mr. Roskovski has not established a "fair and just reason" to withdraw his knowing, intelligent, and voluntary guilty plea to Counts 36 and 42 of the Superseding Indictment. It is abundantly clear that with the retention of new counsel Mr. Roskovski has made a shift in defense tactics. He now contends that his first motion to withdraw his guilty plea was "a bare-bones Motion." (ECF No. 164, p. 4). According to Mr. Roskovski, his second motion "include[s] a detailed factual and evidentiary basis for [his] assertion of actual innocence and does include sworn testimony and documentary evidence supporting exactly how and why [he] failed to understand the technical scienter requirements of the two federal statues he pleaded to [. . .]." (ECF No. 164, p. 5). The Court disagrees. Mr. Roskovski continues to advance the same argument as to his innocence – i.e., that he lacked the necessary intent. His "new" arguments merely put flesh on the bones of the old and ring hollow.

Mr. Roskovski now contends that he "misunderstood from discussions with prior counsel that the burden necessary to prove a loss amount, which is what results in a sentence, and the burden necessary to prove an element of the charge, such as intent, were two distinctly different burdens." (ECF No. 164, p. 19). He posits:

> As to the charge of filing a false income tax return, Mr. Roskovski was under the mistaken impression that the mere underreporting of income was sufficient to establish his guilt at trial. [ ] Mr. Roskovski misunderstood from his

>discussions with prior counsel that preponderance of evidence was not the standard on the intent element to be applied if he were to go to trial. [ ]
>
>As to the charge of making a false statement in connection with a loan application, Mr. Roskovski mistakenly believed that falsity, without the required element of intent proved beyond a reasonable doubt, was also sufficient to establish his guilt at trial. [ ] Mr. Roskovski misunderstood from his discussions with prior counsel the correct burden to be applied at trial, and, as a result, he believed that the mere inclination that he should have known of the falsity was sufficient to prove his guilt at trial. [ ] Mr. Roskovski had a genuine misunderstanding as to the standard for intent for both charges for which he pleaded guilty.

(ECF No. 164, p. 19). Mr. Roskovski goes on to assert that his experience as a detective was with the enforcement of state criminal statutes, "not as a lawyer or prosecutor," and "the complex interplay between the burdens of proof required at the conviction versus the sentencing phases in federal fraud cases is a difficult field even for experienced federal legal practitioners, much less laymen." (ECF No. 164, p. 20).

The Court remains convinced that Mr. Roskovski has failed to make a credible showing of innocence that is supported by a factual record. As outlined on pages six through eleven of the Court's prior Memorandum Opinion and incorporated herein, the Court conducted a lengthy and thorough guilty plea colloquy during which Mr. Roskovski entered a knowing and voluntary plea to Counts 36 and 42 of the Superseding Indictment. (ECF No. 145, pp. 6-11). The Court made it abundantly clear that the Government's burden of proof at trial was beyond a reasonable doubt, and there is no question that Mr. Roskovski understood that burden during the plea proceedings as well as the elements of the crimes to which he was pleading guilty. Added to this, the Government set forth a more than adequate factual basis for his plea. (ECF No. 142, pp. 8 and 28). By virtue of Mr. Roskovski's education, training and experience,[1] he is well aware

---

[1] It again bears mentioning that Mr. Roskovski is a unique defendant. He has a 1998 bachelor's degree in Psychology and Sociology from the University of Pittsburgh. He attended police

5

that the burden of proof – beyond a reasonable doubt - remains the same at a criminal trial in state and federal court. For him to argue that he had any other understanding about the burden of proof in a criminal trial borders on preposterous. At no time during the guilty plea proceeding did the Court or either of the parties refer to the Government's burden of proof at sentencing. Moreover, a late-emerging dispute over sentencing factors does not equate to a showing of actual innocence. Quite simply, the Court rejects Mr. Roskovski's argument that he was "confused" about the Government's burden of proof at trial as to Counts 36 and 42. His alleged misunderstanding fails to provide an adequate reason for the Court to allow him to withdraw his plea.

Additionally, the Court would note that the exhibits Mr. Roskovski proffered in support of his motion are of little, or no, evidentiary value. The Court attaches absolutely no evidentiary value to the self-serving affidavit Mr. Roskovski submitted as "Exhibit A" to his motion. (ECF No. 164-1). The document is entirely lacking in credibility to the Court in light of Mr. Roskovski's own prior sworn testimony as to his guilt. Further, Mr. Roskovski's Exhibits B and C are of little value to the Court. Through these exhibits, Mr. Roskovski appears to be alleging

---

academy at the Indiana University of Pittsburgh and received Act 120 Police Certification. The Court previously noted of Mr. Roskovski:

> He was a detective for the Butler County District Attorney's Office for 20 years and actually conducted criminal investigations and participated in criminal proceedings – including trials and guilty plea proceedings. (ECF No. 110, p. 14). He personally conducted investigations involving fraud and other financial crimes. (ECF No. 36). Prior to that, he was employed by the Butler County Sheriff's Department for 4 years. (ECF No. 110, p. 15). One could say he is quite savvy when it comes to the criminal justice system and financial crimes.

(ECF No. 145, p. 12).

that Butler Health System ("BHS") legitimately sponsored Switchback MX LLC.[2] Such allegations are meaningless to the elements necessary to prove Count 36, making false statements in a Loan Application, as well as Count 42, filing a false tax return. The Government rightfully brings to the attention of the Court, "if he believed his sponsorship monies from BHS were legitimate as he purports, [Mr. Roskovski] would have properly reported such income on this 2016 tax return. But he did no such thing." (ECF No. 172, p. 17). As to Mr. Roskovski's Exhibits D and C, they are allegedly copies of Mr. Roskovski's (and his wife's) civil settlement documents. (ECF Nos. 164-4 and 164-5). They have absolutely no bearing on Mr. Roskovski's guilty plea, and they will not be considered by the Court.

Defendant's Exhibit F is purportedly a "Credit Memo" prepared by S&T Bank as part of the approval process for the loan that resulted in Mr. Roskovski's criminal conduct at Count 36. (ECF No. 164-6). Mr. Roskovski is seemingly offering this exhibit in support of his defense that he did not think that his wife's employment status "mattered" to the bank in making its decision to extend them a loan. (ECF No. 164, p. 5). The Court rejects such an argument, and it wholeheartedly agrees with the Government that Mr. Roskovski's argument borders on absurd. The Court's own review of Exhibit F reveals that the Roskovskis' employment status was critical to the bank's decision to extend them a loan. For example, the document states at one point as to the Roskovskis' strengths, "stable wage income of guarantors." (ECF No. 164-6, p. 6).

---

[2] BHS actually contacted the FBI in September 2017 regarding their former Chief Operating Officer, Stephanie Roskovski, whom they terminated in August 2017 after discovering she had been embezzling money through fraudulent travel reimbursement claims and utilizing her corporate credit card for personal expenses. (ECF No. 36). Mrs. Roskovski used the embezzled funds for personal expenses and to assist with expenses of her and her husband's business, Switchback MX LLC, an indoor/outdoor track for dirt bike and motocross riders. The Government's evidence against Mrs. Roskovski revealed that BHS did not knowingly provide sponsorships to the Roskovskis' business. Mrs. Roskovski pled guilty to Mail Fraud and Filing a False Income Tax Return, in violation of 18 U.S.C. § 1341 and 26 U.S.C. § 7206(1).

Mr. Roskovski's attempt to now assert a legal defense is insufficient in the eyes of the Court as it is not supported by a credible claim of innocence. Significantly, during his guilty plea proceeding, the Government set forth the following explanation of Mr. Roskovski's criminal conduct as to Count 36:

> The Court has heard previously that codefendant Stephanie Roskovski was terminated from Butler Health System on August 4th of 2017, following an internal investigation – or an internal revelation, I should say, that she was involved in a fraud with her employer. Thereafter she was employed for just under a year with Highmark in a similar capacity.
> At that particular position she was earning approximately $275,000, when, at some point, Highmark learns of – the government doesn't know how, but learns of her conduct with Butler Health System and prepared and executes with her a separation agreement and release terminating her employment from Highmark.
> The government would present that agreement, which reflects that Ms. Roskovski signed the agreement on March 5th of 2018; furthermore, that the terms of that agreement established her departure effective seven days thereafter. As such, her termination was 3/12 of '18. One day later the defendant, Your Honor, applied for more than a million dollars in loan funds from S&T Bank.
> Specifically, on March 13th of 2018, they submit a loan application jointly. They set forth various information; and in connection with that loan application, they are directed, as any other applicant would be, to complete in detail a personal financial statement which is provided to the bank and relied upon by the bank in assessing whether the loan should be extended. That personal financial statement, as indicated in the indictment, was provided to – submitted to S&T Bank specifically on March 16th of 2018, four days after the defendant well knew she was no longer employed – as did the defendant – no longer employed with Highmark.
> On that particular personal financial statement, the government would establish that the defendant falsely reported that his wife was employed and earning $275,000 when they very well knew she was unemployed at the time. Two, they also provided a false information as it related to their liabilities. There were schedules as part of the personal financial statement, short schedules, specifically as it related to Schedule G, other liabilities.
> The defendant failed to report to S&T Bank that he and his wife had earlier entered into, at the time of her termination from BHS, a civil settlement agreement that addressed some of the funds that were embezzled from BHS. And as part of the civil settlement agreement, as of March 13th of 2018, the defendant well knew that they owed and were on a payment plan of at least 270,000 or more dollars.
> Both of these pieces of information would significantly affect their personal financial well-being, most importantly the fact that both defendants were no longer employed. And the government would establish that the bank, in turn,

relied upon that financial information and extended two loans based upon such information, one being the significant loan for refinancing the motocross business and one being for a significant piece of equipment that was purchased specifically for use at the motocross business.

(ECF No. 142, pp. 32-34). Furthermore, Mr. Roskovski's plea agreement with the Government embodies a stipulation whereby he specifically acknowledged that he acquired two loans from S&T Bank totaling $1,183,611.00, both of which were extended by the bank upon his submission of a loan application containing materially false information. (ECF No. 142, p. 26). Mr. Roskovski's current argument – that he falsified the application, but did not intend to influence the bank's decision by doing so – is far from evidence supporting a credible claim of innocence. His attempts to explain away criminal conduct as to Count 36 at this late juncture in the case is nothing more than a last ditch effort by Mr. Roskovski to avoid sentencing.

Lastly, as to Exhibit G, it appears to be a statement from S&T showing that the Roskovskis have been making timely payments on the loan. (ECF No. 164-7). In all candor to the Court, the Government submits that it has never said otherwise. (ECF No. 172). The status of the loan payment is irrelevant to the Court's resolution of the present motion, and Exhibit G will not be considered by the Court.

Mr. Roskovski has not meaningfully established that he is innocent. The Court cannot ignore that Mr. Roskovski's factual admissions at his guilty plea hearing, "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Mr. Roskovski swore a solemn oath to tell the truth during his guilty plea proceeding. At no time during that process, did he indicate his innocence. He participated in a thorough guilty plea colloquy where the Court asked him on numerous occasions whether he had had sufficient time to confer with counsel and whether he understood the nature of the proceeding. Mr. Roskovski replied affirmatively to each inquiry. The Court engaged in a lengthy inquiry to ensure that Mr.

Roskovski was acting knowingly and voluntarily in pleading guilty. Mr. Roskovski went on to affirm that he was guilty based on having committed the acts set forth by the government at Counts 36 and 42 of the Superseding Indictment. Then, after the guilty plea proceeding, he went through the process of the preparation of the Final Presentence Investigation Report and Addendum. At no point during that process, or in the eight months he awaited sentencing, did Mr. Roskovski allege his innocence. Mr. Roskovski's first allegation of innocence occurred a mere 15 days before his sentencing hearing. His second allegation of innocence occurred 32 days after retaining new counsel, and being presumably dissatisfied with the Court's refusal to allow him to withdraw his guilty plea 53 days earlier. The Court holds that Mr. Roskovski has not met the first factor to withdraw his guilty plea. It does not perceive that Mr. Roskovski is truly claiming innocence. To the extent he is, the Court finds it lacking in indicia of good faith, credibility and weight.

While the Court need not consider the second factor, it would nevertheless note that it remains unpersuaded by the strength of Mr. Roskovski's reason for withdrawing his plea. The second factor in assessing whether a guilty plea can be withdrawn is whether a defendant has proffered "sufficient reasons to explain why contradictory positions were taken before the district court and why permission should be given to withdraw the guilty plea and reclaim the right to trial." *Jones*, 336 F.3d at 253 (citation omitted). It is not enough, post-plea, to proffer a defense to the charges as "[t]here are few if any criminal cases where the defendant cannot devise some theory or story which, if believed by a jury, would result in his acquittal." *Gov't of Virgin Islands v. Berry*, 631 F.2d 214, 220 (3d Cir. 1980) (citation omitted). Mr. Roskovski's motion falls woefully short of establishing the existence of strong reasons to support the withdrawal of his guilty plea. He has not come forth with any meaningful explanation as to why he entered a

10

plea of guilty, thoroughly admitted his guilt, and did not contest the Government's characterization of the facts or the elements of the offenses. The Court holds that he has not met the second factor to withdraw his guilty plea.[3]

The Court has carefully considered Mr. Roskovski's second motion to withdraw his guilty plea, although it does believe it is nothing more than a veiled reconsideration motion.[4] It finds that Mr. Roskovski has not established a "fair and just reason" to withdraw his knowing and voluntary guilty plea to Counts 36 and 42 of the Superseding Indictment.[5]

---

[3] The Court stands by its previous analysis, contained in its Memorandum Opinion, that the prejudice factor also weighs against withdrawal of the plea. (ECF No. 145, pp. 13-14).

[4] Neither the Federal Rules of Criminal Procedure nor the Local Criminal Rules for the United States District Court for the Western District of Pennsylvania provide for a motion to reconsider a dispositive ruling. That said, a district court has the inherent authority to revisit its own ruling if it is shown to be incorrect. A party seeking reconsideration must show: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court [made its decision]; or (3) the need to correct a clear error of law or fact to prevent manifest injustice." *Max's Seafood Café ex. rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted). Mr. Roskovski's motion is not based on any of these three grounds. Had he attempted to argue that either (2) or (3) applied, the Court would have found otherwise.

[5] An evidentiary hearing is completely unnecessary for the Court's resolution of the motion. It has found no merit to Mr. Roskovski's contentions regarding the first two factors, and it will not countenance any further delays that would inevitably occur with holding an unnecessary hearing.

### III. CONCLUSION

For the foregoing reasons of law and fact, Mr. Roskovski is not entitled to withdraw his guilty plea. His motion will be denied by separate Order. This case will proceed to the Evidentiary Hearing scheduled to commence on June 7, 2021 at 9:30 a.m. that will be followed by a Sentencing Hearing on June 10, 2021 at 10:30 a.m.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

May 3, 2021
Date